

**FILED**
**Apr 09, 2026**
**02:24 PM(CT)**
**TENNESSEE COURT OF**
**WORKERS' COMPENSATION**
**CLAIMS**

# TENNESSEE BUREAU OF WORKERS' COMPENSATION
# IN THE COURT OF WORKERS' COMPENSATION CLAIMS
# AT NASHVILLE

| | |
|---|---|
| **JAYNE-ANNE PATRICK,**<br>　　　　　**Employee**,<br>**v.**<br>**TOPGOLF,**<br>　　　　　**Employer**,<br>**and**<br>**ARCH INDEM. INS. CO.,**<br>　　　　　**Carrier**. | **Docket No. 2025-60-6990**<br><br>**State File No. 57728-2024**<br><br>**Judge Dale Tipps** |

## EXPEDITED HEARING ORDER GRANTING BENEFITS

The Court held an Expedited Hearing on April 2, 2026. The issues were whether Ms. Patrick is likely to prove at trial that she is entitled to additional temporary disability and medical benefits. For the reasons below, the Court holds that Ms. Patrick is likely to prevail at a hearing on the merits that she is entitled to continuing medical treatment, including the surgery ordered by Dr. Sean Kaminsky, and temporary partial disability benefits beginning on January 6, 2026.

### Claim History

Ms. Patrick worked as a bartender for Topgolf when she injured her left knee on June 1, 2024. Topgolf accepted the claim and furnished medical treatment at an urgent care clinic. Ms. Patrick later began treating with Dr. Calvin Dyer, an orthopedic surgeon, in September.

Dr. Dyer noted crepitus in the left knee and ordered a steroid injection and MRI. When Ms. Patrick returned, Dr. Dyer reviewed the MRI and assessed a complex tear of the medial meniscus, as well as chondromalacia patellae. He performed an arthroscopy in January 2025.

Two weeks later, Dr. Dyer removed the sutures and noted that Ms. Patrick had

1

good motion. He assigned lifting and sit/stand restrictions and expressed the hope that she would be back at regular duty sometime in March. Six weeks after surgery, Dr. Dyer felt Ms. Patrick was making a "reasonable" recovery. He continued her restrictions and anticipated maximum recovery in another four to five weeks.

When Ms. Patrick returned in April, she had just begun physical therapy. Dr. Dyer recommended continued therapy and modified her restrictions somewhat. He again hoped she would be ready to return to regular duty in three to four weeks.

Four weeks later, Ms. Patrick reported instability when bending or squatting, and Dr. Dyer observed less quadriceps tone. He again assigned restrictions and said he would "hope for maximum medical improvement with return to regular duty work when she comes back in approximately 5-6 weeks."

At her next appointment, Ms. Patrick told Dr. Dyer she tried three shifts of limited duty but could not do the work because of "too much up and down." He said she should continue with physical therapy, which had just restarted. Dr. Dyer also set a follow-up for one month and said he expected maximum medical improvement at that time. He added that he did not "have objective findings to warrant her current limitations."

On June 26, 2025, Dr. Dyer said Ms. Patrick's knee extended fully and flexed to 120 degrees. He found no instability and mild patellofemoral crepitus. Dr. Dyer assigned maximum medical improvement and an impairment rating, and he released Ms. Patrick with no permanent restrictions.

Ms. Patrick continued to have problems and sought a second opinion with Dr. Tiffany Meals on August 19. After an MRI, Dr. Meals diagnosed synovial plica syndrome and patellofemoral syndrome. She recommended arthroscopy for plica excision and lateral release.

Based on Dr. Meals's recommendations, Ms. Patrick filed a Petition for Benefit Determination, seeking a new panel of surgeons and resumption of temporary disability benefits. Topgolf began offering surgical panels to Ms. Patrick in November, and she selected Dr. William Garside.

Ms. Patrick described to Dr. Garside persistent sharp pain in her knee, which occurred with weight-bearing activities. She also reported swelling, hyperextension, and locking. Dr. Garside felt the MRI revealed no recurrent pathology, and he observed that the medial plica had already been resected during Dr. Dyer's

2

operation. He did not recommend surgery.

Topgolf sent another panel, and Ms. Patrick selected Dr. Kaminsky. On January 5, 2026, he recorded her complaints of continued knee pain, locking, and swelling. Dr. Kaminsky assessed chondromalacia and offered revision arthroscopy as a last option, saying he could not guarantee it would alleviate her symptoms. However, he said, "few other options remain," and he assigned light-duty restrictions until the surgery could be approved.

During the hearing, Ms. Patrick testified that Topgolf was generally unable to accommodate Dr. Dyer's restrictions. She tried to return to work in a lighter-duty position but was unable to finish her shift. As a result, Topgolf paid temporary total disability benefits, although Ms. Patrick said she did not receive payment for approximately 15 days in March. The benefits stopped on July 13 after Dr. Dyer released her in June. Topgolf then terminated her employment after her medical release, but Ms. Patrick could not recall exactly when that occurred.

Ms. Patrick's significant symptoms persisted. She continued physical therapy for several months and gained some stability, but her pain worsened, which led her to seek a second opinion with Dr. Meals.

Currently, Ms. Patrick described near-constant pain, as well as locking and swelling in her left knee. Standing and walking are difficult and worsen her symptoms. She can only walk for about five minutes and limits her lifting to 15 pounds. She has been unable to work since Dr. Dyer released her.

Ms. Patrick requested an order for continuing medical treatment, including surgery with Dr. Kaminsky.[1] She also contended that she is entitled to temporary total disability benefits from July 13, 2025, to the present. Finally, Ms. Patrick argued that an award of attorney fees and a penalty for unpaid disability benefits are appropriate.

Topgolf countered that no additional temporary disability is owed. Instead, it contended that it overpaid benefits after the June maximum medical improvement date and is due repayment or a credit. It opposed attorney fees as premature and unmerited, as it had difficulty getting the surgery approved.

---

[1] The parties announced at the hearing that Topgolf authorized the operation a few days before the hearing, and it has been scheduled. Topgolf stipulated that Ms. Patrick is entitled to the recommended surgery.

3

**Findings of Fact and Conclusions of Law**

Ms. Patrick must show she is likely to prevail at a hearing on the merits. Tenn. Code Ann. § 50-6-239(c)(6) (2025); *McCord v. Advantage Human Resourcing*, 2015 TN Wrk. Comp. App. Bd. LEXIS 6, at *7-8, 9 (Mar. 27, 2015).

For temporary total disability benefits, Ms. Patrick must prove (1) she became disabled from working due to a compensable injury; (2) a causal connection between her injury and her inability to work; and (3) her period of disability. For temporary partial disability benefits, she must show that her treating physician returned her to work with restrictions that Topgolf either could not or would not accommodate. *Jones v. Crencor Leasing and Sales*, 2015 TN Wrk. Comp. App. Bd. LEXIS 48, at *7, 8 (Dec. 11, 2015).

Beginning with temporary total disability, none of Ms. Patrick's physicians took her completely off work during the relevant time period. Despite this lack of medical proof, she contended that she was unable to return to work because of her extensive left-knee symptoms. Ms. Patrick argued that Dr. Dyer's finding of maximum medical improvement was inconsistent with her continuing physical problems and that her testimony was sufficient to support an award of temporary total disability benefits.

Ms. Patrick was a very credible witness regarding her physical condition and limitations. She did not appear to exaggerate her complaints of pain; her demeanor was consistent with one who had endured pain for some time; and her need for relief was believable. Further, Topgolf offered no proof to rebut this testimony.

However, the Court cannot substitute its judgment for that of qualified physicians in this case and just assume the existence of temporary restrictions that foreclosed any employment opportunities for Ms. Patrick. Without medical proof, she has not shown she is likely to prove entitlement to temporary total disability benefits.

Regarding temporary partial disability benefits, Ms. Patrick presented proof that Drs. Dyer and Kaminsky both assigned temporary restrictions. Further, Topgolf was clearly unable to accommodate those restrictions, as it terminated her employment. However, Topgolf contended that no additional disability benefits are appropriate because Dr. Dyer placed Ms. Patrick at maximum medical improvement on June 26, 2025.

4

Topgolf is correct that temporary disability benefits are generally not owed after maximum medical improvement. However, this rule is not without exception. If a maximum medical improvement determination is "premature and incorrect," temporary disability benefits may still be awarded. *Mansell v. Southeast Personnel Leasing, Inc.*, 2025 TN Wrk. Comp. App. Bd. LEXIS 9, at *11 (Mar. 12, 2025). However, an employee "still must show that he would likely prevail at trial in proving that the original [maximum medical improvement] determination was premature." *Id.*[2]

The Supreme Court Workers' Compensation Panel held that the initial maximum improvement determination was premature and incorrect when an MRI, approximately one year later, revealed the need for additional surgery. *Wise v. Murfreesboro Health Care Ctr.*, no number in original, 1994 Tenn. LEXIS 389, at *9 (Tenn. Workers' Comp. Panel Dec. 22, 1994). Similarly, the Board recently held that additional temporary benefits were proper when an employee experienced additional symptoms after reaching maximum medical improvement, an MRI revealed severe post-traumatic arthritis, and the doctor retracted his opinion. *Laymance v. K-VA-T Food Stores, Inc.*, 2026 TN Wrk. Comp. App. Bd. LEXIS 2, at *12 (Jan. 14, 2026).

As to the time when Ms. Patrick last saw Dr. Dyer and first saw Dr. Kaminsky, *Wise* and *Laymance* are distinguishable from this case. The employees in those cases offered evidence that their symptoms or underlying medical conditions changed after they reached maximum medical improvement.

Instead, like the employee in *Mansell*, Ms. Patrick offered no expert proof that Dr. Dyer "placed [her] at [maximum medical improvement] prematurely or that he has retracted that determination or otherwise reversed his opinion." 2025 TN Wrk. Comp. App. Bd. LEXIS 9 at *11. Like the *Mansell* court, this Court cannot find that the doctor's original determination was premature or medically incorrect without any expert medical opinion to support that conclusion. As noted above, that kind of speculation is improper, as courts cannot formulate their own medical opinions. *Id.* For this reason, Ms. Patrick has not yet shown she is likely to prove entitlement to

---

[2] The Court was unable to identify any specific authority on this question as to temporary partial disability benefits. *Mansell* and the other cases cited addressed temporary total disability rather than partial. However, both partial and total disability benefits share the limitation of maximum medical improvement terminating the right to benefits. Thus, the analysis is the same, and the Court views these cases as controlling authority.

temporary partial disability benefits between June 26, 2025, and January 5, 2026.

Dr. Kaminsky's restrictions, on the other hand, must be given due consideration because Ms. Patrick selected him from a panel offered by Topgolf. Under section 50-6-204(a)(3)(A)(i), this means Dr. Kaminsky is an authorized physician, and Topgolf has approved the surgery he recommended on January 5. As an authorized physician, he also assigned temporary restrictions on standing and lifting, which Topgolf has not accommodated.

As in *Wise*, the underlying premise that Ms. Patrick reached maximum medical improvement has now proven to be premature and incorrect, as suggested by the need for a second surgery. *Wise*, 1994 Tenn. LEXIS 389 at *9. No contrary opinion from Dr. Dyer was offered as evidence. As a result, she appears likely to prove entitlement to temporary partial disability benefits at the agreed weekly compensation rate of $509.04 from January 6, 2026, until Dr. Kaminsky lifts her restrictions or determines her to have reached maximum medical improvement.

Ms. Patrick alleged several days of no payments sometime in March while she was receiving temporary disability benefits. However, she did not present any proof establishing the exact period of nonpayment, so the Court is unable to determine how much, if any, unpaid benefits she may be entitled.

Conversely, Topgolf claimed it overpaid temporary disability benefits after the maximum medical improvement date and is due repayment or a credit. This question would be more appropriately addressed at a final hearing, especially given the underpayment claim, and the Court declines to order the requested adjustment at this time.

Finally, Ms. Patrick requested an award of attorney fees for recovery of unpaid temporary disability benefits. Section 50-6-226(d)(1)(B) allows an award of attorney's fees when an employer unreasonably fails to timely provide benefits. As Ms. Patrick has not yet established any entitlement to temporary disability benefits between June 26, 2025, and January 5, 2026, attorney fees for that period are inapplicable.

Regarding the temporary disability benefits beginning January 6, Ms. Patrick presented no evidence regarding the reasonableness of Topgolf's denial. Further, awards of attorney's fees at the interlocutory stage of a case are only allowed in extremely limited circumstances. *Thompson v. Comcast Corp.*, 2018 TN Wrk. Comp. App. Bd. LEXIS 1, at *28-29 (Jan. 30, 2018). The Court therefore declines

6

to award attorney fees under section 50-6-226(d)(1)(B) at this time.

Ms. Patrick also requested an order penalizing Topgolf under section 50-6-205(b)(3), which provides a 25% penalty of temporary disability benefits not paid under the statute. As required by section 50-6-205(b)(3), the Court therefore orders Topgolf to provide documentation no later than April 29, 2026, as to why the civil penalty should not be assessed.

**IT IS, THEREFORE, ORDERED** as follows:

1. Topgolf shall provide Ms. Patrick with medical treatment made reasonably necessary by her June 1, 2024 injury under Tennessee Code Annotated section 50-6-204, including the surgery recommended by Dr. Kaminsky.

2. Topgolf shall pay Ms. Patrick temporary partial disability benefits at the agreed weekly rate of $509.04 beginning January 6, 2026, until Dr. Kaminsky either releases her with no restrictions or assigns maximum medical improvement. All accrued benefits shall be paid within ten days of this order. Her attorney is entitled to fees of 20% of the accrued and ongoing amounts.

3. Ms. Patrick's request for attorney fees under section 50-6-226(d)(1)(B) is denied.

4. This case is set for a Status Hearing on June 24, 2026, at 10:30 a.m. Please call 855-874-0473 to participate. Failure to call might result in a determination of the issues without your further participation. All conferences are set using Central Time.

5. Unless an interlocutory appeal of the Expedited Hearing Order is filed, compliance with this Order must occur no later than seven business days from the date of entry of this Order as required by Tennessee Code Annotated section 50-6-239(d)(3).

**ENTERED April 9, 2026.**

_____

**JUDGE DALE TIPPS**
**Court of Workers' Compensation Claims**

**APPENDIX**

**Exhibits:**
1. Wage Statement
2. December 16, 2025 medical panel
3. November 12, 2025 medical panel
4. Physical therapy records (identification only)
5. Indexed medical records
6. January 5, 2026 Work Status Form

## CERTIFICATE OF SERVICE

I certify that a copy of this order was sent as shown on April 9, 2026.

| Name | Email | Service sent to: |
|---|---|---|
| Martin Sir, Employee's Attorney | X | Martin.sir@martinsirlaw.com |
| Tiffany Hranicky, Employer's Attorney | X | tbhranicky@mijs.com |

_____

**PENNY SHRUM, COURT CLERK**
**wc.courtclerk@tn.gov**